UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-00557-MOC
(3:18-cr-00099-MOC-DCK-1)

| | |
|---|---|
| GARLIN RAYMOND FARRIS, ) </br> ) </br> Petitioner, ) </br> ) </br> vs. ) </br> ) </br> ) </br> UNITED STATES OF AMERICA, ) </br> ) </br> Respondent. ) </br> _____ ) | **MEMORANDUM OF DECISION** </br> **AND ORDER ON REMAND** |

**THIS MATTER** is before the Court on remand from the Court of Appeals for the Fourth Circuit to address a claim brought by Petitioner in his motion to vacate pursuant to 28 U.S.C. § 2255, which the Fourth Circuit found to be unresolved. [Doc. 25]. Also pending are the following motions by the Petitioner:

(1) Motion for Appointment of Counsel [Doc. 27],

(2) Pro Se Motion for a 28 U.S.C. § 2255 Evidentiary Hearing and Appointment of Counsel Under 18 USC § 3006A [Doc. 29],

(3) Motion for Leave to File Supplemental Brief After Remand on Whether Counsel's Failure to Investigate Seth Joseph Mays Impaired Petitioner's Defense [Doc. 33];

(4) Motion to Reconsider and Grant Relief on Napue Claim in Light of Glossip v. Oklahoma and Remand [Doc. 34],

(5) Motion to Reconsider Ineffective Assistance Claim Against Appellate Counsel Under Rule 54(b) and Rule 12 (2255) [Doc. 35], and

(6) Motion to Reconsider Ineffective Assistance Claim Against Post-Trial Counsel Under Rule 54(b) and Rule 12 (2255) [Doc. 36].[1]

I. BACKGROUND

On April 4, 2019, the jury found Petitioner guilty on one count of methamphetamine trafficking conspiracy, which was alleged to have run from January 2016 through in or about June 2017, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One); one count of possession with intent to distribute methamphetamine on June 9, 2017, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count Two); and one count of possession with intent to distribute cocaine base on March 6, 2018, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Four). [Criminal Case No. 3:18-cr-00099-MOC-DCK ("CR"), Doc. 61: Jury Verdict; CR Doc. 10: Bill of Indictment]. The jury acquitted him of one count of possession with intent to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Three). [CR Doc. 61].

On August 8, 2023, this Court denied and dismissed Petitioner's motion to vacate under 28 U.S.C. § 2255 on the merits and addressed Petitioner's other then-pending motions in a lengthy Order, which the Court herein incorporates by reference. [See Docs. 1, 5, 14]. The Court then denied Petitioner's motion to alter or amend judgment under Fed. R. Civ. P. 59(e) that followed. [Docs. 16, 17]. Petitioner appealed both the denial of his motion to vacate and the denial of the Rule 59(e) motion. [Docs. 18, 21].

On June 16, 2025, the Court of Appeals for the Fourth Circuit dismissed Petitioner's appeal and remanded the case, finding that the Court failed to address part of one of Petitioner's many claims that his trial counsel was ineffective. [Doc. 25]. That is, the Fourth Circuit found that this

---

[1] Petitioner has also filed a letter with the Court in which he provides supplemental authority and argues relative to an issue not before this Court on remand. [See Doc. 26]. The Court, therefore, will disregard this filing.

Court failed to address whether trial counsel's alleged failure to investigate Seth Joseph Mays, "a potential alternative suspect, … so impaired [Petitioner's] defense that it constituted ineffective assistance of counsel."[2] [Id. at 3]. The Fourth Circuit concluded that this Court did not adjudicate all the claims raised in Petitioner's motion to vacate, dismissed the appeal for lack of jurisdiction, and remanded the case to this Court to consider the aforementioned claim.[3] [Id. at 3-4].

The Court, therefore, will consider Petitioner's claim that his attorney's alleged failure to investigate Mays denied Petitioner the right to present a complete defense. [See Doc. 1 at 11; Doc. 5 at 5]. In this regard, Petitioner has moved to file a "Supplemental Brief" seeking "to bring clarity to this claim" where the Fourth Circuit noted that Petitioner's motion to vacate "was not a model of clarity." [Doc. 33 (citing United States v. Farris, Nos. 23-7022 & 23-7065, 2025 WL 1682728, n.* (4th Cir. June 16, 2025)); see Doc. 33-1]. The Court will grant this motion to the extent Petitioner's submission does not state grounds beyond those asserted in his original motion in support of the claim before the Court on limited remand. [See Docs. 1, 5].

## II. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must prove (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "there is a reasonable probability that,

---

[2] This Court found relative to Mays that, even if Petitioner could "show that [his trial counsel] did not attempt to interview Mays and that this was deficient, he cannot show prejudice. Petitioner has not shown that Mays was available, would have testified, and would have provided exculpatory testimony." [Doc. 14 at 38 (citation omitted)]. Moreover, given the extraordinary number of grounds for relief propounded by Petitioner, the Court noted that "any claims not specifically addressed by the Court herein have been carefully reviewed and considered and the Court finds them to be without merit." [Id. at 31 n.4].

[3] On remand, this matter was reassigned to the undersigned due to the retirement of United States District Judge Robert J. Conrad, Jr.

3

but for counsel's unprofessional errors, the result of the proceeding would have been different." See Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).

To establish deficient performance, a petitioner must demonstrate that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed … by the Sixth Amendment." Id. at 687. "Deficient performance is not merely below-average performance; rather, the attorney's actions must fall below the wide range of professionally competent performance." Griffin v. Warden, Md. Correctional Adjustment Ctr., 970 F.2d 1344, 1357 (4th Cir. 1992) (citing Strickland, 466 U.S. at 694). When evaluating counsel's performance, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. In assessing performance, a court must apply a "heavy measure of deference to counsel's judgments." Id. at 691. "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington v. Richter, 562 U.S. 86, 88 (2011).

"Strickland's objective reasonableness prong requires counsel to conduct appropriate factual and legal inquiries and to allow adequate time for trial preparation and development of defense strategies." Huffington v. Nuth, 140 F.3d 572, 578 (4th Cir. 1998) (citations omitted). "Although 'a lawyer's failure to investigate a witness who has been identified as crucial may indicate an inadequate investigation, the failure to investigate everyone whose name happens to be mentioned by the defendant does not suggest ineffective assistance.'" Huffington, 140 F.3d at 580 (quoting Gray v. Lucas, 677 F.2d 1086, 1093 n.5 (5th Cir. 1982)). "Particularly when evaluating decisions not to investigate further, we must regard counsel's choices with an eye for

4

'reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" Bunch v. Thompson, 949 F.2d 1354, 1363 (4th Cir. 1991) (quoting Strickland, 466 U.S. at 691).

"An attorney's failure to present available exculpatory evidence is ordinarily deficient, 'unless some cogent tactical or other consideration justified it.'" Griffin, 970 F.2d at 1358 (quoting Washington v. Murray, 952 F.2d 1472, 1476 (4th Cir. 1991)). "Failing to present a witness, however, is neither unreasonable nor prejudicial if that witness would not have led to the admission of exculpatory testimony." Fenn v. United States, 175 F.Supp.3d 602, 609 (E.D.V.A. 2016) (citation omitted). In assessing the reasonableness of an attorney's investigation, "a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." Wiggins v. Smith, 539 U.S. 510, 527 (2003). Furthermore, our legal system "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

To establish prejudice, the petitioner must demonstrate there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. It is not sufficient to show the mere "'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1994) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). That is, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Fundamental fairness

5

"require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense." California v. Trombetta, 467 U.S. 479, 485 (1984).

> To safeguard that right, the Court has developed "what might loosely be called the area of constitutionally guaranteed access to evidence." United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982). Taken together, this group of constitutional privileges delivers exculpatory evidence into the hands of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of our criminal justice system.

Trombetta, 467 U.S. at 485. "Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." Id. (citing United States v. Agurs, 427 U.S. 97, 112 (1976)).

Moreover, "[g]iven that the ultimate concern is the fundamental fairness and reliability of the outcome of the trial, when making the prejudice determination a court 'must consider the totality of the evidence before the judge or jury.'" Huffington, 140 F.3d at 578 (quoting Strickland, 466 U.S. at 695). If the petitioner fails to affirmatively show prejudice, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Petitioner asserts numerous claims and allegations relative to his attorney's alleged failure to investigate Mays. Petitioner alleges that an investigation into Mays would have revealed that Mays' role in Jones' "drug trafficking organization ('DTO') was one of great significance." [Doc. 1 at 11]. Petitioner alleges that he repeatedly asked his attorney to interview Mays, "reasoning that Mays and Jones had been arrested and charged for the drugs found in the vehicle, and that Jones and Mays, and not the Petitioner were the perpetrators of the crime of Possession With Intent to Distribute Methamphetamine." [Doc. 5 at 6; see Doc. 33-1 at 3]. Petitioner contends that

6

Case 3:22-cv-00557-MOC    Document 38    Filed 01/29/26    Page 6 of 15

reasonable counsel would have investigated "the only other person" with information on the guilt or innocence of her client. [Id.; see Doc. 33-1 at 3].

Petitioner asserts that "despite the fact that Mays initially was arrested and charged along with Jones with intent to distribute methamphetamine and possession of stolen firearms along with other charges on June 10, 2017," counsel resisted Petitioner's requests to interview Mays regarding the Walmart transaction. [Doc. 1 at 11; see Doc. 33-1 at 2 (claiming Mays was initially charged with being a felon in possession of a firearm)[4]]. Petitioner further alleges that within weeks the charges against Mays were dropped and the discovery materials in Petitioner's case had no investigatory notes or reports regarding Mays. [Doc. 5 at 6]. Petitioner contends that when he questioned his attorney regarding these dismissed charges, his attorney said, "He probably works as a CI for the government." [Doc. 1 at 11]. Petitioner contends that his attorney failed to investigate whether Mays was, in fact, an informer or interview Mays to learn what he witnessed or his relationship with Jones to prepare for trial and develop a trial strategy. [Doc. 5 at 6]. Petitioner alleges that his attorney could have learned through Mays where Jones purchased her drugs. [Doc. 1 at 12].

Petitioner explains that, although Jones initially told law enforcement that Mays was her boyfriend and that "he had nothing to do with the guns and drugs found in the vehicle," Jones testified at trial that "Mays was head of security for her DTO" and that he also sold methamphetamine.[5] [Doc. 5 at 6]. Petitioner contends that these purported inconsistencies should

---

[4] None of the materials cited or submitted by the Petitioner show that Mays was arrested for and charged with possession of stolen firearms or being a felon in possession of a firearm. [See Doc. 1 at 11; Doc. 1-1 at 4-5, 7-8].

[5] Petitioner also now points to Jones' testimony admitting that she claimed ownership of the firearm found in her vehicle and pleaded guilty to a felon in possession charge "so that [her] boyfriend wouldn't get charged with it." [Doc. 33-1 at 2; see Doc. 91 at 201]. In this regard, Petitioner argues that Jones' "admitted

7

have been revealed to the jury. [Id. at 7]. Finally, Petitioner argues that because of his counsel's failures "the jury … was denied the depth and full scope of Mays' involvement in the drugs found in Jones' vehicle on June 10, 2017." [Id.].

On the issue of prejudice, Petitioner asserts that "[i]nvestigating Mays would have allowed alternative theory of defense with a high probability of a different result" and that "a reasonable probability exists that if counsel had performed as counsel should have, the jury would have acquitted Petitioner of Counts 1 and 2."[6] [Doc. 5 at 7, 21]. In support of these contentions, Petitioner now argues that the verdict in this case "turned on Jones's credibility … versus Petitioner's denial." [Doc. 33-1 at 2, 4].

To begin, Petitioner's allegations are speculative and insufficient to establish "a reasonable probability" that, but for counsel's alleged errors, "the result of the proceeding would have been different." See Strickland, 466 U.S. at 694; see also Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) (requiring "a proffer of what favorable evidence or testimony would have been produced" in support of an ineffective assistance claim based on inadequate investigation). Petitioner baldly claims that an investigation into Mays would have revealed Mays' role "of great

---

role to shield [Mays]" would have been revealed through reasonable investigation and constituted "powerful impeachment and alternative-suspect evidence." [Id. at 4].

[6] In his Rule 59(e) motion, Petitioner argued that the Court failed to consider the "alternative defense" Petitioner claims he set forth through his submission of a record showing that Mays was arrested in Catawba County on May 23, 2017, with charges of PWIMSD Schedule I and II controlled substances and possession of marijuana and a Schedule IV controlled substance. [See Doc. 16 at 4; Doc. 1-1 at 8]. Petitioner argued that Mays' May 23, 2017 arrest "for methamphetamine and heroin charges" over two weeks before the Walmart transaction "was consistent with" Petitioner's claim that Petitioner "did not sell methamphetamine or heroin." [Doc. 16 at 4]. Petitioner further asserted that Jones may have been willing to take a felony charge for Mays as she had done for her former husband. [Id.].

Petitioner did not raise this argument in his motion to vacate and the Court did not specifically address it in denying his Rule 59(e) motion. [See Docs. 1, 5, 17]. Even if Petitioner had properly raised this claim, it is meritless. Mays' May 23 arrest record does specify what controlled substances Mays was charged with possessing. Moreover, if it were methamphetamine and heroin, his possession of these substances suggests, under all the circumstances and evidence at trial, that he was a down-the-chain participant in the conspiracy, not that he was Jones' supplier.

significance" in Jones' drug conspiracy and that counsel could have learned, through Mays, "where Jones purchased her drugs."  Petitioner, however, also suggests that Jones acquired her drugs from Mays and is pointing the finger at Petitioner to protect Mays.  Petitioner has presented nothing suggesting that Mays would have admitted to being responsible for the drugs in Jones' car or provided information exculpating the Petitioner.

Furthermore, pursuant to this Court's Standing Discovery Order and the policy of the U.S. Attorney's Office for the Western District of North Carolina, the Government provides Brady and Giglio material to defense counsel when a defendant proceeds to trial.  [CR 3/30/2018 Docket Entry (Standard Discovery Order)].  As such, if the Government had evidence that some alternative suspect, including Mays, was responsible for the drugs in Jones' car, the Government would have been duty bound "to turn over exculpatory evidence that would raise a reasonable doubt about [Petitioner's] guilt," Trombetta, 467 U.S. 479, 485 (1984) (citing United States v. Agurs, 427 U.S. 97, 112 (1976)), regardless of any request by defense counsel.

Additionally, even if Mays were an informer, the Government would not have been required to disclose this fact under the circumstances here.  There is a general privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. 53, 59 (1957) (citations omitted).  This privilege is limited, in part, by "the fundamental requirements of fairness." Id. at 60-61.  In this regard, "the privilege must give way … [w]here the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause[.]" Id.  This limitation on the scope of this privilege typically arises where the legality of a search without a warrant is in issue and the Government claims the communications of an informer establish probable cause. Id. at 61.  The

9

limitation may also arise where the informer is the sole participant, other than the accused, in the transaction charged and the informer was "the only witness in a position to amplify or contradict the testimony of government witnesses." Id. at 64. Here, Mays was not the sole participant to the transaction nor was there any evidence that he created the opportunity for it. Rather, Mays' putative role as an informer providing information to the Government before and/or after his and Jones' arrests would not have changed Petitioner's guilt of his offenses of conviction.

Next, Petitioner's claim that his attorney should have revealed to the jury the inconsistency between Jones' initial statements to law enforcement that Mays "had no knowledge or involvement in criminal activity" and her trial testimony that he "was the head of security for her DTO" and also sold methamphetamine is inapposite. First, Jones did not testify that Mays was "the head of security" for her drug trafficking organization. She testified that "[h]e was my muscle, I guess you would say." [CR Doc. 91 at 165]. Jones also testified that Mays "wouldn't always come with me" and that she had had others accompany her during previous transactions with the Petitioner. [Id. at 207]. That Jones may have initially sought to protect her boyfriend from criminal prosecution is not unusual. Furthermore, while Petitioner claims the drug charges against Mays may have been dropped because Mays was an informer, they very well may have been dismissed because Mays was not involved, other than by his presence, in the Walmart transaction. Second, there is nothing inconsistent between Jones' statement that Mays had nothing to do with the drugs found in her car on June 10, 2017, and her later sworn testimony that Mays generally sold "a little bit" of the methamphetamine Jones obtained from Petitioner in Charlotte when they returned to Catawba County but "dealt more with guns that he did with the dope." [See CR Doc. 91 at 165]. This testimony is also consistent with Mays' May 23 charges.

10

Case 3:22-cv-00557-MOC     Document 38     Filed 01/29/26     Page 10 of 15

Furthermore, Petitioner's attorney effectively cross-examined and sought to impeach Jones, in any event. [See CR Doc. 91 at 189-213]. Counsel questioned Jones regarding her conflicting and embellished statements to law enforcement and sought to impeach her credibility. [Id. at 190-91, 200-01, 209-10]. Counsel also elicited testimony from Jones that Jones has schizoaffective disorder, was not regularly taking her medication in June 2017, and was using methamphetamine at the time to treat it. [Id. at 197-98].

Finally, while Petitioner hangs on this discrepancy regarding Mays' involvement in the sale of methamphetamine provided by the Petitioner, he conveniently ignores that the onus of his trial testimony directly and materially conflicted with his earlier, post-arrest admissions to law enforcement that he distributed methamphetamine and heroin and that he sold to Jones a few times. [See CR Doc. 92 at 43-46, 55]. At trial, he asked the jury to disbelieve these admissions and, instead, believe his self-serving testimony claiming that he "was lying" to law enforcement about selling methamphetamine after his arrest because "[he] was trying to get out of jail." [Id. at 55]. Petitioner, however, had far more reason to lie than did Jones. Jones had already pleaded guilty to federal charges and had been sentenced to a term of 196 months' imprisonment, and a condition of her plea agreement was to testify truthfully. [Case No. 5:17-cr-00057-KDB-DCK (W.D.N.C.), Doc. 17 at ¶ 24: Plea Agreement]. Had Jones perjured herself, she risked perjury charges, undermining her plea, and facing reinstitution of the charges against her. [Id., id. at ¶¶ 3-4, 24]. Despite Petitioner's attorney's efforts at impeaching Jones, the jury believed Jones' testimony regarding the Walmart transaction and was convinced of Petitioner's involvement in a drug conspiracy, which is unsurprising considering the weight of evidence against him.

On the issue of prejudice in particular, Petitioner asserts only that "[i]nvestigating Mays would have allowed alternative theory of defense with a high probability of a different result" and

that "a reasonable probability exists that if counsel had performed as counsel should have, the jury would have acquitted Petitioner of Counts 1 and 2." [Doc. 5 at 7, 21]. Petitioner, however, fails to allege how Mays' purported role "of great significance" in Jones' "DTO" or potential informer status negated Petitioner's guilt, other than Petitioner's factually and logically unsupported claim that Mays, not Petitioner, was responsible for the methamphetamine in Jones' car. On this point, Petitioner testified that he met Jones, who lived in Catawba County,[7] at a Walmart in Charlotte to sell her a pound of marijuana but that she declined the sale because the marijuana was "too fruity." [CR Doc. 92 at 48-50]. Carrying Petitioner's "theory" to its logical conclusion, the jury would have to believe that Jones drove with Mays from Catawba County to Charlotte with a kilogram of methamphetamine in her car that she had previously obtained from Mays in Catawba County to purchase marijuana from the Petitioner. Prevailing logic and common sense, however, suggest the far more probable conclusion that Jones and Mays traveled from Newton, North Carolina, to Charlotte for Jones to purchase methamphetamine, which was packaged consistent with Petitioner's practice, from the Petitioner. Mays' arrest on state drug charges and release in the weeks before the Walmart transaction does not lend credence to Petitioner's theory. Rather, it suggests, consistent with Jones' testimony, that Mays sold some of the drugs that Jones obtained from the Petitioner in Charlotte when she and Mays returned to Catawba County.

For these reasons, even if his attorney had investigated Jones and presented him as an alternative suspect to the Walmart transaction, he has not shown any reasonable probability that result of the proceeding would have been different. Strickland, 466 U.S. at 694. In advancing his claims of prejudice, Petitioner ignores the substantial evidence presented at trial corroborating his

---

[7] Jones lived in Newton, North Carolina, which she testified is 45 minutes to an hour from Charlotte. [Doc. 91 at 138: Trial Tr.].

guilt of Counts One and Two and undermining a finding of prejudice here,[8] see Huffington, 140 F.3d at 578, particularly given his admissions to law enforcement, including that he sold methamphetamine to Jones.

In sum, Petitioner has failed to show, and the Court therefore cannot conclude, that any alleged failure to investigate Mays "so impaired [his] defense that it constituted ineffective assistance of counsel," see Trombetta, 467 U.S. at 485 (requiring "a meaningful opportunity to present a complete defense"), or that the result of the proceeding was otherwise "fundamentally unfair or unreliable," Lockhart, 506 U.S. at 369. The Court, therefore, will deny this claim.

The Court will deny Petitioner's motions for counsel and an evidentiary hearing [Docs. 27, 29] as moot and deny Petitioner's other pending motions as outside the scope of the Fourth Circuit's remand order. See United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (stating that "the mandate of a higher court" when remanding a case defines the scope of issues before a lower court).

### III. CONCLUSION

For these reasons, the Court will deny the claim remaining on remand. Petitioner's other claims presented in his motion to vacate pursuant to 28 U.S.C. § 2255 and his Rule 59(e) motion remain denied in accordance with the Court's previous Orders. The Court will grant Petitioner's motion to file a supplemental brief and deny Petitioner's other pending motions in accordance with the terms of this Order.

---

[8] He also ignores that the conspiracy charged in Count One ranged from January 2016 through June 2017 and was predicated on far more than the single Walmart transaction.

# ORDER

**IT IS FURTHER ORDERED** that Petitioner's Pro Se Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] and Petitioner's Motion Pursuant to Rule 59(e) [Doc. 16] are **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Appointment of Counsel [Doc. 27], Petitioner's Pro Se Motion for a 28 U.S.C. § 2255 Evidentiary Hearing and Appointment of Counsel Under 18 USC § 3006A [Doc. 29], Motion to Reconsider and Grant Relief on Napue Claim in Light of Glossip v. Oklahoma and Remand [Doc. 34], Motion to Reconsider Ineffective Assistance Claim Against Appellate Counsel Under Rule 54(b) and Rule 12 (2255) [Doc. 35], and Motion to Reconsider Ineffective Assistance Claim Against Post-Trial Counsel Under Rule 54(b) and Rule 12 (2255) [Doc. 36] are **DENIED** in accordance with the terms of this Order.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Leave to File Supplemental Brief After Remand on Whether Counsel's Failure to Investigate Seth Joseph Mays Impaired Petitioner's Defense [Doc. 33] is **GRANTED** in accordance with the terms of this Order.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

The Clerk is respectfully instructed to notify the United States Court of Appeals for the Fourth Circuit of the entry of this Order.

**IT IS SO ORDERED**.

Signed: January 27, 2026

Max O. Cogburn Jr.
United States District Judge

15

Case 3:22-cv-00557-MOC     Document 38     Filed 01/29/26     Page 15 of 15